1   JOHN C. FISH, Jr., Bar No. 160620
    jfish@littler.com
2   BLAIR C. SENESI, Bar No. 313580
    bsenesi@littler.com
3   LITTLER MENDELSON, P.C.
    333 Bush Street
4   34th Floor
    San Francisco, California  94104
5   Telephone:   415.433.1940
    Fax No.:      415.399.8490
6
    Attorneys for Defendants
7   COUNTY OF CONTRA COSTA and CONTRA
    COSTA COUNTY OFFICE OF THE DISTRICT
8   ATTORNEY

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12
    MARY ELIZABETH KNOX; RACHEL            Case No. 3:20-cv-01449-JCS
13  PIERSIG; ALISON CHANDLER; MARY
    BLUMBERG; JILL HENDERSON,              **DEFENDANTS' MOTION FOR**
14                                         **SUMMARY JUDGMENT OR,**
                      Plaintiffs,          **ALTERNATIVELY, PARTIAL**
15                                         **SUMMARY JUDGMENT**
           v.
16                                         **[FED. R. CIV. P. 56]**
    THE COUNTY OF CONTRA COSTA; THE
17  CONTRA COSTA COUNTY DISTRICT           Date:      May 6, 2022
    ATTORNEY'S OFFICE; and Does 1 through  Time:      9:30 a.m.
18  10, inclusive,                         Judge:     Hon. Joseph C. Spero
                                           Courtroom: F – Floor 15
19                    Defendants.          Location:  450 Golden Gate Avenue
                                                      San Francisco, CA  94102
20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
    333 Bush Street
      34th Floor
San Francisco, CA  94104
    415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                                          3:20-CV-01449-JCS

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ................................................................................................. 2

II.  PROCEDURAL HISTORY .................................................................................. 3

III.  STATEMENT OF FACTS ................................................................................... 4

    A.  Office Structure.......................................................................................... 4

    B.  Diana Becton Is Appointed Interim District Attorney .............................. 5

    C.  Diana Becton Is Elected District Attorney In June 2018 ........................... 6

    D.  Plaintiffs' Assignments Since DA Becton Was Elected............................ 10

        1.  Mary Knox .................................................................................... 10

        2.  Jill Henderson ............................................................................... 12

        3.  Rachel Piersig ............................................................................... 13

        4.  Alison Chandler ............................................................................ 13

        5.  Mary Blumberg .............................................................................. 14

IV.  ARGUMENT ..................................................................................................... 15

    A.  Summary Judgment Standard ................................................................... 15

    B.  Plaintiffs' Title VII Claims Are Time Barred ......................................... 15

    C.  Chandler's FEHA Age Claim Is Barred For Failure to Exhaust .............. 17

    D.  To The Extent Plaintiffs' Age And Gender Claims Are Not Time Barred,
        They Fail Because No Genuine Dispute Of Material Fact Exists ............. 17

        1.  Standard For Discrimination Claims ............................................. 17

        2.  Plaintiffs' Claims Based On Lateral Assignments And Committee
            Exclusion Fail As A Matter Of Law ............................................. 18

            a.  Lateral Assignments And Committee Exclusion Are Not
                Adverse Actions................................................................. 19

            b.  Legitimate Nondiscriminatory Reasons Exist For Plaintiffs'
                Job Assignments ................................................................ 20

            c.  There Is No Evidence Of Pretext ....................................... 21

        3.  Knox's Demotion Claim Fails As A Matter Of Law ..................... 23

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

i.

3:20-CV-01449-JCS

# TABLE OF CONTENTS
(CONTINUED)

PAGE

4.  Knox, Henderson, And Piersig's Claims Based On Defendants' Failure To Promote Them To Level 5 Fail As A Matter Of Law .............................. 24

E.  Plaintiffs' Retaliation Claims Fail Because There Is No Evidence That They Engaged In Protected Activity, Or That A Causal Link Exists Between Any Alleged Protected Activity And An Adverse Action.................................... 26

1.  Knox's Retaliation Claim Fails......................................................... 26

2.  Piersig And Chandler's Retaliation Claims Fail............................... 27

3.  Henderson's Retaliation Claim Fails ............................................... 28

4.  Blumberg's Retaliation Claim Fails................................................. 28

F.  Plaintiffs' Failure To Prevent Discrimination Claim Also Fails .............................. 29

1.  Because Defendant Did Not Engage In Discrimination, Plaintiffs' Derivative Failure To Prevent Claim Necessarily Fails ................................ 29

2.  Defendants Promptly Investigated And Have Robust Policies And Procedures In Place To Prevent Discrimination ............................ 29

V.    CONCLUSION.................................................................... 30

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

ii.

3:20-CV-01449-JCS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Akers v. County of San Diego,*
    95 Cal. App. 4th 1441 (2002) ...........................................................................................19

5

6

*Barefield v. Bd. of Trustees of CA State Univ., Bakersfield,*
    500 F. Supp. 2d 1244 (E.D. Cal. 2007)..............................................................................25

7

8

*Bradley v. Harcourt, Brace & Co.,*
    104 F.3d 267 (9th Cir. 1996) .......................................................................................22, 25

9

*Burlington Industries, Inc. v. Ellerth,*
    524 U.S. 742 (1998)............................................................................................................20

10

11

*California Fair Employment & Hous. Comm'n v. Gemini Aluminum Corp.,*
    122 Cal. App. 4th 1004 (2004) ..........................................................................................29

12

13

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)............................................................................................................15

14

*Coleman v. Quaker Oats,*
    232 F.3d 1271 (9th Cir. 2000) ...........................................................................................24

15

16

*Cotton v. Alameda,*
    812 F.2d 1245 (9th Cir. 1987) ...........................................................................................22

17

18

*Dep't of Fair Employment & Housing v. Lucent Techs., Inc.,*
    642 F.3d 728 (9th Cir. 2011) .......................................................................................22, 25

19

*Elrod v. Burns,*
    427 U.S. 347 (1976)............................................................................................................25

20

21

*Fazio v. City of San Francisco*
    125 F.3d 1328 (9th Cir. 1997) ...........................................................................................26

22

*Flores v. City of Westminster,*
    873 F.3d 739 (9th Cir. 2017) .............................................................................................28

23

24

*Fonseca v. Sysco Food Servs. of Arizona, Inc.,*
    374 F.3d 840 (9th Cir. 2004) .............................................................................................18

25

26

*Gathenji v. Autozoners, LLC,*
    703 F. Supp. 2d 1017 (E.D. Cal. 2010)..............................................................................22

27

*Godwin v. Hunt Wesson, Inc.,*
    150 F.3d 1217 (9th Cir. 1998) ...........................................................................................18

28

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

iii.

3:20-CV-01449-JCS

*Grosz v. Boeing Co.*,
  455 F. Supp. 2d 1033 (C.D. Cal. 2006) .................................................................22, 25

*Hawn v. Exec. Jet Mgmt., Inc.*,
  615 F.3d 1151 (9th Cir. 2010) ...............................................................................17, 18

*Hicks v. KNTV Television, Inc.*,
  160 Cal. App. 4th 994 (2008) .......................................................................................25

*Horn v. Cushman & Wakefield Western, Inc.*,
  72 Cal. App. 4th 798 (1999) .........................................................................................21

*James v. Tempur Sealy Int'l, Inc.*,
  2019 U.S. Dist. LEXIS 64280 (N.D. Cal. April 15, 2019) ..........................................26

*Jurado v. Eleven-Fifty Corp.*,
  813 F.2d 1406 (9th Cir. 1987) ................................................................................27, 28

*Keesler v. Chipotle Mexican Grill, Inc.*,
  2015 WL 898970 (C.D. Cal. Mar. 3, 2015) ..................................................................30

*Kelley v. Corr. Corp. of Am.*,
  750 F. Supp. 2d 1132 (E.D. Cal. 2010) ........................................................................28

*Lam v. City & Cty. of San Francisco*,
  868 F. Supp. 2d 928 (N.D. Cal. 2012) ..........................................................................18

*Lewis v. City of Fresno*,
  834 F. Supp. 2d 990 (E.D. Cal. 2011) ..........................................................................28

*Malais v. LA City Fire Dep't*,
  150 Cal. App. 4th 350 (2007) .........................................................................19, 27, 29

*Manatt v. Bank of Am., NA*,
  339 F.3d 792 (9th Cir. 2003) ........................................................................................21

*Maples v. SolarWinds, Inc.*,
  50 F. Supp. 3d 1221 (N.D. Cal. 2014) ....................................................................16, 17

*Mayfield v. Sara Lee Corp.*,
  2005 WL 88965 (N.D. Cal. Jan. 13, 2005) .............................................................27, 28

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) .......................................................................................................18

*McRae v. Dep't of Corr. & Rehab.*,
  142 Cal. App. 4th 377 (2006) .........................................................................19, 27, 29

*Merrick v. Hilton Worldwide, Inc.*,
  867 F.3d 1139 (9th Cir. 2017) .......................................................................................29

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

iv.

3:20-CV-01449-JCS

*Miller v. Dep't of Corr.*,
   36 Cal. 4th 446 (2004) ..................................................................................26, 27

*Mondero v. Salt River Project*,
   400 F.3d 1207 (9th Cir. 2005) ........................................................................22

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002)....................................................................................15, 16

*Nissan Fire & Marine Ins. Co. v. Fritz Cos. Inc.*,
   210 F.3d 1099 (9th Cir. 2000) ........................................................................15

*Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.*,
   103 Cal. App. 4th 1021 (2002) ......................................................................30

*Reid v. Google, Inc.*,
   50 Cal. 4th 512 (2010) ..................................................................................22

*Rodriguez v. Airborne Express*,
   265 F.3d 890 (9th Cir. 2001) ..........................................................................17

*Scott v. Solano Cty. Health & Soc. Servs. Dep't*,
   2008 WL 3835267 (E.D. Cal. Aug. 15, 2008) ...............................................25

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993)........................................................................................20

*Steckl v. Motorola, Inc.*,
   703 F.2d 392 (9th Cir. 1983) .....................................................................18, 24

*Texas Dep't of Cmty. Affairs v. Burdine*,
   450 U.S. 248 (1981)....................................................................................18, 20

*Trujillo v. N. County Trans. Dist.*,
   63 Cal. App. 4th 280 (1998) ..........................................................................29

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013)........................................................................................26

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) ........................................................................26

*Wong v. Pape Mach., Inc.*,
   2009 WL 937471 (E.D. Cal. April 7, 2009) ...................................................23

*Woodson v. Int'l Bus. Machines, Inc.*,
   2006 WL 1195453 (N.D. Cal. May 2, 2006) ..................................................20

*Yanowitz v. L'Oreal USA, Inc.*,
   36 Cal. 4th 1028 (2005) ...........................................................................27, 28

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

v.

3:20-CV-01449-JCS

*Yurick v. Superior Court*,
   209 Cal. App. 3d 1116 (1989) ................................................................................17

**Statutes**

42 U.S.C. § 2000e-5(e)(1).........................................................................................15, 16

42 U.S.C. § 2000e *et seq.* (Title VII of the Civil Rights Act of 1964; "Title VII") .............. *passim*

42 U.S.C. § 12203 ............................................................................................................26

Cal. Gov't Code § 12940 ................................................................................................26

Cal. Gov't Code § 12940(k).............................................................................................29

**Other Authorities**

Fed. R. Civ. P. 56(a) .......................................................................................................15

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

vi.

3:20-CV-01449-JCS

## NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT ON May 6, 2022, at 9:30 a.m. via Zoom in Courtroom F – 15th Floor of the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants County of Contra Costa and Contra Costa County District Attorney's Office ("Defendants") will and hereby do move pursuant to Federal Rules of Civil Procedure, Rule 56 for summary judgment, or in the alternative, partial summary judgment in favor of Defendants and against Plaintiffs Mary Elizabeth Knox, Rachel Piersig, Alison Chandler, Mary Blumberg, and Jill Henderson ("Plaintiffs").

This Motion for Summary Judgment, Or Alternatively, Partial Summary Judgment ("Motion") is based on the grounds that Plaintiffs cannot establish essential elements of their claims and/or rebut Defendants' evidence that no unlawful action was taken against them, and therefore Defendants are entitled to judgment as a matter of law. There are no triable issues of material fact. Specifically, the following issues are without substantial controversy:

1.      Plaintiffs' First Cause of Action for gender discrimination in violation of the Fair Employment and Housing Act ("FEHA") fails on the grounds that Plaintiffs cannot establish a *prima facie* case, and, even if they could, Defendants had legitimate, nondiscriminatory reasons and there is no evidence of pretext.

2.      Plaintiffs' Second Cause of Action for age discrimination in violation of FEHA fails on the grounds that Plaintiff Chandler did not exhaust her administrative remedies, and Plaintiffs cannot establish a *prima facie* case, and, even if they could, Defendants had legitimate, nondiscriminatory reasons and there is no evidence of pretext.

3.      Plaintiffs' Third Cause of Action for failure to take preventative action in violation of FEHA fails on the grounds that Plaintiffs cannot establish they were subjected to discrimination or retaliation or that Defendants failed to take reasonable steps to prevent discrimination or retaliation.

4.      Plaintiffs' Fourth Cause of Action for retaliation in violation of FEHA fails on the grounds that Plaintiffs cannot establish protected activity, and, even if they could, Plaintiffs cannot establish that protected activity was a but-for cause of any alleged adverse action.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                                    1.                              3:20-CV-01449-JCS

5.      Plaintiffs' Fifth Cause of Action for gender discrimination in violation of Title VII fails on the grounds that (1) their claims are time barred; and (2) they cannot establish a *prima facie* case, and, even if they could, Defendants had legitimate, nondiscriminatory reasons and there is no evidence of pretext.

6.      Plaintiffs' Sixth Cause of Action for age discrimination in violation of the Age Discrimination in Employment Act fails on the grounds that (1) their claims are time barred; and (2) they cannot establish a *prima facie* case, and, even if they could, Defendants had legitimate, nondiscriminatory reasons and there is no evidence of pretext.

7.      Plaintiffs' Seventh Cause of Action for retaliation in violation of Title VII fails on the grounds that (1) their claims are time barred; and (2) Plaintiffs cannot establish protected activity, and, even if they could, Plaintiffs cannot establish that protected activity was a but-for cause of any alleged adverse action.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the accompanying declarations and exhibits thereto, the complete files and records in this action, any reply papers Defendants may file, and such argument as may be presented to the Court in conjunction with the hearing on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This is not a case of discrimination or retaliation. Although Plaintiffs, five current or former Deputy District Attorneys—Mary Knox, Mary Blumberg, Rachel Piersig, Alison Chandler, and Jill Henderson—filed suit alleging age and gender discrimination and retaliation, there is just no evidence to support their claims.

District Attorney Diana Becton ("DA Becton") is the first woman, and the first African American, to ever be the Contra Costa County District Attorney. She is also the first District Attorney not to have "risen through the ranks" as a prosecutor in the office. Preceding her appointment, DA Becton served as a Contra Costa County Superior Court judge for twenty-two years. In September 2017, she was appointed Interim District Attorney by the Contra Costa Board of Supervisors following the resignation of the prior DA, and she was elected DA in June 2018.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                    2.                          3:20-CV-01449-JCS

In sharp contrast to Plaintiffs' allegations, the facts actually demonstrate that of the 11 promotions DA Becton has made to her executive management team, six were women and all but one were over age 40. Indeed, DA Becton's first three promotions were all women, including the first woman ever to be a Chief Assistant DA and the first woman (and first African American) ever to be an Assistant DA. Moreover, the percentage of women prosecutors officewide has increased from 43% to 55% during DA Becton's administration.

The crux of Plaintiffs' claims is that they either did not receive their preferred assignment or they were not promoted to DA Becton's executive management team. Mary Knox is the only Plaintiff who alleges she was demoted unlawfully. Knox's claims, however, illustrate why summary judgment is warranted. Knox alleges her demotion from the executive management team and assignment to a non-supervisorial role was due to her gender and age, but she admitted in deposition that she has "no idea" why these decisions were made. In contrast, DA Becton and others listed the many legitimate, nondiscriminatory reasons for these decisions, including multiple complaints by attorneys Knox supervised, a lack of trust based on misrepresentations made by Knox on two occasions, a history of not following the directives of the prior DA, friction with her supervisor, and concerns raised by defense attorneys. As for Knox's most recent assignment leading the Elder Abuse Unit, she was transferred there per the recommendation of her friend and co-Plaintiff Jill Henderson and is handling a wide array of complex matters and trial work, including homicides.

So, while Plaintiffs have not been selected (yet) for promotion to the executive management team, other women and persons over age 40 have. And Plaintiffs have been assigned to other important roles, including supervisorial roles, that best match their skills with the current needs of the office. These decisions were made without regard to their gender or age and Plaintiffs have no evidence otherwise—just their own conclusory opinions that they should have been promoted over others. That is not sufficient under the law to defeat summary judgment.

## II.  PROCEDURAL HISTORY

Between August 23 and November 21 of 2019, Plaintiffs Knox, Piersig, Chandler and Blumberg filed charges with the California Department of Fair Housing and Employment ("DFEH"). Fish Decl., ¶ 2, Ex. A. On February 26, 2020, the four Plaintiffs filed a 39-page Complaint against the

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                    3.                    3:20-CV-01449-JCS

County, the DA's Office and DA Becton. Docket ("ECF") No 1. On May 14, 2020, Henderson filed her DFEH Charge, and on August 14, 2020, Plaintiffs filed a 45-page Amended Complaint adding her. Fish Decl., ¶ 2, Ex. A; Amended Compl., ECF No. 21. On October 19, 2020, Defendants filed a Motion to Dismiss. ECF No. 26. In lieu of having the Court rule on the motion, Plaintiffs agreed to dismiss DA Becton, as well as their claims for failure to investigate and for punitive damages, and to amend the complaint to correct other pleading deficiencies. Fish Decl., ¶ 4. On March 22, 2021, Plaintiffs filed their 120-page Second Amended Complaint. Second Amended Complaint ("SAC"), ECF No. 45. Defendants filed a second motion to dismiss, which was partly denied/granted. ECF Nos. 49 and 53. The SAC is the operative complaint.

Between November 18, 2021 and November 29, 2021 – nearly 21 months after filing their original Complaint and just prior to the November 30, 2021 discovery cutoff – Plaintiffs each filed Charges of Discrimination with the EEOC. Fish Decl., ¶ 5, Ex. C.

## III. STATEMENT OF FACTS

### A. Office Structure

The DA heads the Contra Costa County District Attorney's Office ("DA's Office" or "Office"). Declaration of Jason Chan ("Chan Decl.") ¶ 3. Reporting directly to the DA, is the Chief Assistant District Attorney ("Chief") and the Assistant District Attorneys ("ADAs"). *Id.* Directly below them are the Senior Deputy District Attorneys ("Sr. DDA" and also referred to as "Level 5"). *Id.* The Office has typically had one Chief, two ADAs, and three to five Sr. DDAs and they, together with the DA, constitute the executive management team. *Id.* at ¶ 4.

Attorney salaries for Level 4 and below are negotiated by the Deputy District Attorney Association.[1] *Id*. at ¶ 8. The salaries are set by Level, not by position or by individual attorney. All of the Plaintiffs are at Level 4 and at the maximum salary possible for a Level 4. *Id*. at ¶ 10.

The DA has the complete discretion to choose her executive management team. Becton Decl., ¶ 6. The rank and file attorneys (the Office typically employs about 105 attorneys) are assigned to different units, such as Homicide, Sexual Assault, and Juvenile. *Id*. at ¶ 7. Attorney assignments and

---

[1] Salaries are publicly available at
https://www.contracosta.ca.gov/DocumentCenter/View/1392/Salary-SchedulePDF.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

1  office-wide rotations are made by the DA in conjunction with feedback from the executive

2  management team. Becton Decl., ¶ 8. Office-wide rotations are not subject to a precise timetable, but

3  they usually occur annually, and occasionally more often. *Id*. During these rotations, many attorneys

4  are reassigned to different roles due primarily to the needs of the Office, but also to obtain a breadth

5  of experience and to avoid burnout, considering that assignments like Homicide can be very

6  demanding and stressful. *Id*. While there is no minimum or maximum time for any assignment, an

7  assignment typically ranges from a few months to three years based on the needs of the Office and the

8  individual attorneys. *Id*.

9  **B.      Diana Becton Is Appointed Interim District Attorney**

10  From 2010 until he resigned in June 2017, Mark Peterson was the DA. Chan Decl., ¶ 7.

11  Peterson's executive management team at the time of his resignation was: Chief Doug MacMaster;

12  ADAs Tom Kensok and Dan Cabral; Sr. DDAs Nancy Georgiou, Phyllis Redmond, Paul Graves and

13  Plaintiff Mary Knox; and "Acting" Sr. DDA Lynn Uilkema. *See* Chan Decl., Ex. A. In 2017, the other

14  Plaintiffs were all Level 4s: Henderson was in the Elder unit, Piersig and Chandler were in Homicide,

15  and Blumberg was a Misdemeanor Trial Team Supervisor. *Id*.

16  In September 2017, the Contra Costa County Board of Supervisors appointed Diana Becton as

17  Interim DA. Becton Decl., ¶ 2. She was the first woman, first African American, and first DA not to

18  have "risen through the ranks" of the DA's Office. *Id*. at ¶ 4. DA Becton had previously served for 22

19  years as a Contra Costa County Superior Court judge, where she was elected as Presiding Judge. *Id.,*

20  Ex. A. Over her distinguished career she has been honored and recognized for many accomplishments,

21  including as a pioneer, role model and champion for women. *Id.* at ¶ 5; *see also id.,* Ex. A.

22  Shortly after she was appointed, Chief MacMaster and ADAs Kensok and Cabral met with DA

23  Becton at her home to apprise her of key issues related to the Office. *Id.* at ¶ 11. They relayed that

24  there had been complaints from attorneys Mary Knox supervised, that she could not be trusted, that

25  she did not follow the chain of command, and that DA Peterson had decided to demote Knox. *Id*.; *see*

26  *also* Fish Decl., Ex. E at 109:20-21.

27

28

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                          5.                          3:20-CV-01449-JCS

The self-described "senior women" of the Office (which included Knox but none of the other Plaintiffs) met with DA Becton in September 2017, to in part express concerns about Chief MacMaster and ADAs Kensok and Cabral. Becton Decl., ¶ 12, Ex. D; Fish Decl., Ex. D at 128:5- 135:3.

After a couple months in office, DA Becton began making changes to her executive management team. DA Becton promoted Lynn Uilkema to Sr. DDA in November 2017, she demoted Chief MacMaster to a Level 4 position, and promoted Phyllis Redmond to be the Office's first ever female Chief in December 2017. Becton Decl., ¶¶ 12-13. When ADA Kensok retired in lieu of being demoted, she hired as Assistant District Attorney Venus Johnson who had previously been a deputy district attorney in Alameda County as well as Associate Attorney General to California Attorney General Kamala Harris. *Id.* at ¶ 14*; see also* Fish Decl., Ex. F at 37:3-21. Johnson was the first person ever to be hired as an ADA from outside the Office and the first African American ADA. Becton Decl., ¶ 14. Shortly after hiring Johnson, DA Becton promoted Jon Yamaguchi to Sr. DDA (filling the position that. Redmond held before she was promoted to Chief). *Id.* at ¶ 15.

Accordingly, as of March 2018, DA Becton's executive management team consisted of six women (DA Becton, age 67; Chief Redmond, age 54; ADA Johnson, age 38; and Sr. DDAs Nancy Georgiou, age 56, Lynn Uilkema, age 50 and Mary Knox, age 57) and three men (ADA Cabral, age 57; and Sr. DDAs Paul Graves, age 49, and Jon Yamaguchi, age 57). Chan Decl., Exs. D, K.

## C.    Diana Becton Is Elected District Attorney In June 2018

In June 2018, Diana Becton won the Contra Costa County DA election over long time Sr. DDA Paul Graves. Becton Decl., ¶ 2. It was a hard-fought election and most of the Office openly supported Graves. *Id.*

DA Becton oversaw her first office-wide staffing rotation in October 2018. Becton Decl., ¶ 15. As DA, Becton employed a collaborative management style. *Id.* at ¶ 3, *see also* Fish Decl., Exs. E at 215:15-20, G at 120:8-18, and H at 118:9-15. She frequently sought feedback and listened to her leadership team. Becton Decl., ¶ 3. As such, she received feedback from several members of her executive management team, including Chief Redmond, ADAs Johnson and Cabral, and Sr. DDAs Uilkema, and Georgiou. *Id.* at ¶ 15.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                                    6.                                    3:20-CV-01449-JCS

1   One of many decisions made as of October 2018 was to eliminate the Level 5 position

2   overseeing the Community Violence Reduction Unit ("CVRU") which was held by Mary Knox. *Id.*

3   DA Becton decided that CVRU did not warrant or need its own Level 5 supervisor and that the unit

4   should instead report directly to ADA Johnson (exactly as the Homicide unit did). *Id.* DA Becton also

5   decided to demote Plaintiff Knox from a Level 5 to a Level 4 and reassign her to the Felony Filer role.

6   *Id.* at ¶ 16. There were no objections to these decisions from anyone on the executive management

7   team. *Id.; see also* Fish Decl., Ex. I at 629:4-5, 630:9-14, 659:13-660:05, 661:13-20, and Ex. D at

8   113:4-5. The following influenced DA Becton's decision to demote Knox:

- Prior to even becoming Interim DA, she had been cautioned that Knox was not trustworthy.

- In September 2017, then Chief MacMaster and ADAs Cabral and Kensok apprised her of many issues with Knox, including complaints from her subordinates that resulted in one attorney resigning because of her, Knox not following the chain of command, not getting along with her supervisor, not following the instructions of the prior DA, not working well with defense attorneys, not being a team player, and the fact that the prior DA had decided to demote her.

- ADA Johnson notified DA Becton of complaints about Mary Knox from attorneys Knox supervised who feared retaliation by Knox if their complaints were not kept confidential.

- DA Becton lost trust in Knox in part because she believed Knox misrepresented statements made by Judge Santos and in part because she believed Knox told ADA Johnson she had an independent witness in a case when in fact she did not.

- DA Becton understood that Knox had a poor reputation with the defense bar and would not listen to/negotiate plea deals.

- Knox spoke with the media without obtaining prior approval.

- DA Becton understood that Knox did not follow procedures/requirements with respect to the Freeway project.

- Knox had a reputation of not being thoughtful regarding gang enhancements and using them in punitive ways.

- Criticisms of Knox's relationship with her supervisor and her supervision of attorneys as reflected in prior performance evaluations.

- The CVRU was a small unit that did not warrant its own Level 5 as it could be overseen by an Assistant District Attorney the same as the Homicide Unit.

Becton Decl., ¶ 17.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                    7.                    3:20-CV-01449-JCS

1    DA Becton decided to assign Knox to the Felony Filer role because of the above concerns

2    combined with the fact that the role was an important "gatekeeper" role with discretion to determine

3    charges, required an experienced attorney, and did not require supervision of attorneys. *Id.* at ¶ 18.

4    DA Becton met with Knox in person and apprised her of the changes. *Id.* ¶ 19. The next day,

5    and nearly three weeks before the new assignments would go into effect, an office-wide memorandum

6    was circulated announcing the rotations. *Id.*; Ex. E.

7    Additionally, as part of the October 2018 staffing rotations, DA Becton, with input from her

8    executive management team, decided to demote Paul Graves from Level 5 to Level 4 and reassign him

9    to another position. Becton Decl., ¶ 20. Approximately two months later, DA Becton promoted Chris

10   Walpole (male, 43 years old at the time), then a Level 4, into Graves's former Level 5 role. *Id.* In

11   deciding that Walpole was the most qualified, DA Becton considered the discretion she had as DA to

12   select her management team, as well as many factors including experience, diversity of thought,

13   willingness to follow the chain of command, positive outlook, the needs of the office, problem solving

14   skills, work ethic, and a willingness to implement the office vision and policies. *Id.* DA Becton also

15   consulted with her executing management team before making the final decision. *Id.*

16   Further executive management changes occurred in the Spring of 2019, upon the retirements

17   of Chief Redmond, and Sr. DDAs Yamaguchi and Uilkema. Becton Decl., ¶ 22. Stacey Grassini (male,

18   age 55 at the time) was named "Acting" Level 5 supervisor of Special Operations per Uilkema's

19   recommendation. *Id.*

20   In selecting replacements for the Sr. DDA openings, DA Becton implemented an open

21   application process, which no DA had ever done for a Level 5 opening which is appointed at the DA's

22   discretion.[2] Becton Decl., ¶ 23, Ex. F; Chan Decl., ¶ 11. Any attorney who met the minimum

23   qualifications could apply. Becton Decl., ¶ 23. Seventeen (17) attorneys applied including Plaintiffs

24   Knox, Piersig, and Henderson. *Id.* Plaintiffs Chandler and Blumberg did not apply. *Id.* Each candidate

25   was given the opportunity to submit an application with their resume and answer certain supplemental

26   questions in written form. *Id.*, Ex. F. Each candidate was also interviewed by the same panel and asked

---

[2] The President of the Deputy District Attorneys Association, Aron DeFerrari, supported the interview process. Becton Decl., ¶ 23.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                              8.                        3:20-CV-01449-JCS

the same questions by the panel. *Id.* The interview panel was comprised of the executive management team—DA Becton, ADA Johnson, ADA Cabral, Sr. DDAs Walpole and Georgiou, and Chief Inspector Paul Mulligan. *Id.*[3] After the interviews, the interview panel discussed the candidates. *Id.* The two candidates who "rose to the top" as the most qualified were Simon O'Connell and Stacey Grassini. *Id.* DA Becton agreed with the panel's recommendations that they were the most qualified and promoted O'Connell and Grassini. *Id.* In reaching this decision, DA Becton considered the discretion she had as DA to select her management team, the feedback and recommendations of the interview panel, as well as the same factors DA Becton considered when she made the decision to promote Walpole (see above). *Id.* O'Connell took over for Nancy Georgiou at the 10 Douglas office because Georgiou, upon her request, transferred to the Richmond office (where Jon Yamaguchi worked), and Stacey Grassini officially became the Level 5 overseeing Special Operations in place of Lynn Uilkema. *Id.* Meanwhile, the Chief role remained vacant upon Redmond's retirement. *Id.*

In June 2019, DA Becton chose Chris Walpole to be the "Acting" ADA while ADA Johnson was on a temporary leave of absence. Becton Decl., ¶ 25. DA Becton did not promote anyone to Level 5 to fill the spot temporarily vacated by Walpole. *Id.* Instead, the Sexual Assault and Domestic Violence Units reported directly up to Walpole as the "Acting" ADA, and the Office functioned with only three Level 5s. *Id.* Upon Johnson's return from leave in early 2020, DA Becton promoted her into the vacant Chief position and Walpole remained "Acting" ADA. *Id.* at ¶ 26.

The executive management team remained the same until the end of June 2021, when DA Becton decided to reinstitute a Level 5 over the Sexual Assault, Domestic Violence, and Elder Abuse Units. Becton Decl., ¶ 28. Instead of simply selecting someone in accordance with her discretion as DA, she redistributed all of the applications from the Spring of 2019 interview process to the current executive management team for discussion and consideration. *Id.* The consensus of the executive management team was that Colleen Gleason (female, 43 years old at the time) was the most qualified.

---

[3] The interviews were scheduled over the course of two days. Becton Decl., ¶ 23. DA Becton was required, unexpectedly, to return to a Board of Supervisors meeting during one of the afternoons. *Id.* The candidates interviewed that afternoon were given the option to reschedule for a time when DA Becton could be present. Plaintiff Piersig was given this choice and elected to proceed with the interview. *Id.* DA Becton attended the interviews of the other two Plaintiffs—Knox and Henderson. *Id.*

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                                          9.                                          3:20-CV-01449-JCS

1    *Id.* DA Becton considered the same factors as when she promoted Walpole, O'Connell, and Grassini,

2    and she agreed Colleen Gleason was the most qualified so she promoted her Level 5 Sr. DDA. *Id.*

3        Approximately one month later, Chief Johnson announced her resignation, and in early August

4    2021, DA Becton named Simon O'Connell the "Acting" Chief. Becton Decl., ¶ 29. Because DDA

5    Devon Bell (female, age 42 at the time) had been the second in command to O'Connell at the 10

6    Douglas office for two years, had regularly supervised the attorneys in that office, and because DA

7    Becton believed Bell was the most qualified using the same factors she had considered when

8    promoting the other Level 5s. *Id.* She also asked her executive management team if they agreed that

9    Bell was the most qualified to fill O'Connell's Level 5 vacancy on an "Acting" basis. *Id.* The team

10   agreed. *Id.* Bell was therefore named "Acting" Level 5 overseeing the 10 Douglas office. *Id.* Months

11   later, DA Becton removed the "Acting" qualifiers from both O'Connell and Bell as they had both

12   performed well in the new roles. *Id.*

13       Since then, Walpole transferred from his "Acting" ADA role back to his previous Level 5 role,

14   and announced his upcoming resignation. Fish Decl., Ex. H at 14:11-21; *see also* Chan Decl., Ex. J.

15   That ADA role currently remains vacant. Chan Decl., Ex. J.

16       **D.    Plaintiffs' Assignments Since DA Becton Was Elected**

17           **1.    Mary Knox**

18       For the reasons described above, in October 2018, DA Becton and the executive management

19   team demoted/reassigned Knox to Felony Filer (Level 4). To be clear, the Felony Filer is an important

20   role that requires a very experienced attorney. Becton Decl., ¶ 18. A Felony Filer is a "gatekeeper"

21   with discretion to determine what charges do or do not get filed. *Id.* Another reason the team decided

22   it was a good choice for Knox was the fact it had no supervisory responsibilities – an area where DA

23   Becton believed Knox was not performing (see above), and others including ADA Cabral, had

24   received several complaints regarding Knox. *See Id.* Indeed, Cabral testified to the following:

25       Q. Okay. Can you give me some examples of her supervisory issues?

26       A. Sure. So there was complaints made from a Patricia Horner who she supervised in
         the juvenile division and who she – and the manner in which she supervised Patricia
27       Horner. Patricia felt as if she was being micromanaged and that she was – Mary Knox
         was making her job difficult to do.

28

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                    10.                    3:20-CV-01449-JCS

> There was a complaint from a Nicole Lopez who felt Mary was discriminating against her and that she was making Nicole's life miserable on the drug unit. Nicole came to me and sat in my office and was in tears about the way that she was being treated by Mary Knox. I had to really console her because of her emotions that she was showing me. She was deeply hurt and actually ended up leaving the office because of Mary Knox's treatment of her.
>
> And then there was another complaint by Dana Filkowski which felt that she – Dana felt that Mary was micromanaging her as well, that she didn't give her any autonomy, and that she was making her life miserable on the drug unit.
>
> There were other complaints I had heard about, but those were the people that I spoke to directly about the way that Mary Knox was treating them. And in my many years of experience as being in this office and as a supervisor, I had never heard anybody receive complaints the way that Mary had received those complaints, and so it was apparent to me that it was not good for the office nor good for the units or the community for that matter for her to continue being a supervisor.

Fish Decl., Ex. E at 110:16-111:22.

Former ADA and Chief Johnson also testified that she received complaints from many of Knox's subordinates. *See* Fish Decl., Ex. F at 106:17-107:13. For example, Johnson described receiving complaints that Knox's style was "heavy handed," *id.*, that "[attorneys] didn't feel like they could go to her and express their concerns about a case . . . or about an offer," *id.* at 109:17-22, and they feared retaliation for having a different opinion than her. *Id.* at 107:1-13.[4]

Knox's poor supervisory skills are further illustrated in her performance evaluations. For example, her 2015 evaluation[5] recommended:

> You need to give people room to fail and learn from their failures. Some people working under you feel like they are being watched to make sure they don't make mistakes or fail to carry out your orders. Watching for mistakes is fine, so long as it is a helpful way and protective way. However, it becomes damaging if people think it is to rule out of fear. Try to recognize their ability and give them freedom to try some things without feeling like they have to ask permission or will be penalized.
>
> ****
>
> You may not realize the weight that falls on people below you is [sic] oversee their work and find fault. Being a supervisor does not always mean being the boss.
>
> ****
>
> There is a feeling that people can't seem to put their finger on, but it seems to involve a sense that something is going to blow up and they will be in trouble. Most can't point to an event, but have some worry that it will happen. This came up in interviews I did with people, but did not show up in written comments.

---

[4] Johnson further testified that she received complaints from many people in the office, including Jason Peck, Satish Jallepalli, Dana Filkowski, Andrea Tavenier, Dan Cabral and Nicole Lopez. Fish Decl., Ex. F at 107:10-19.

[5] Written performance evaluations were sporadic. Chan Decl., ¶9. The 2015 evaluation covers the time when Knox was a Level 5 supervising attorneys during the prior administration. The evaluation was prepared by ADA Kensok and reviewed by Chief MacMaster.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
11.
3:20-CV-01449-JCS

Fish Decl., Ex. J, K at 209:4-19.

Knox's issues with poor communication and inability to take direction and get along with others was documented in previous reviews as well. For example, in 2012, yet another supervisor, John Cope (now Hon. John Cope), rated her as "Needs Improvement"[6] for the category "Supervisor Relations" and provided her with the following advice:

> Recommendations: Sometimes a supervisor's advice is bad; often it is good advice based on different experiences and viewpoints. Be open to either possibility. Try to avoid being "short" or dismissive of direction from supervisors. Try harder to work with your supervisors, and not around them.

Fish Decl., Ex. J, Ex. K at 200:1-12.

Despite these written criticisms, her open friction with supervisors, and discussions with her about her misrepresentations and other issues listed above, Knox testified that she has "no idea" why she was demoted and "no idea" why she was transferred to the Felony Filer role. *Id*. Ex. K at 32:2-15.

In April 2019, Plaintiff Knox was one of the seventeen attorneys who applied for the Level 5 promotions, and one of the fifteen attorneys who were ultimately not selected. Becton Decl., ¶ 23. Again, Knox testified that she has "no idea" why she was not selected for promotion back to Level 5 in April 2019 or why other employees were selected for promotion over her. Fish Decl., Ex. K at 35:9-11. In February 2021, pursuant to the suggestion by her friend and co-Plaintiff, Jill Henderson, Knox was transferred from Felony Filer to the Elder Unit, where she handles a variety of complex cases, including homicides. Fish Decl., Ex. K at 49:7-11, Ex. L at 74:14-77:02.

### 2. Jill Henderson

In June 2019, Plaintiff Jill Henderson was transferred from a Level 4 position in the Elder Unit into a newly created Level 4 role of Domestic Violence ("DV") Supervisor. Chan Decl., Ex. G. She was still a Level 4 and her pay remained the same, but she went from supervising one (1) attorney to supervising six (6) attorneys. Chan Decl., Exs. E, H. Henderson was one of the seventeen attorneys who applied for the Level 5 promotions in April 2019, and one of the fifteen attorneys who were

---

[6] A "Needs Improvement" rating is defined as: "Resists instruction. Reluctantly complies with directions. Speaks negatively of supervisor to others. Does not follow the chain of command." *See* Fish Decl., Ex. J.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                                     12.                          3:20-CV-01449-JCS

ultimately not selected. Becton Decl., ¶ 23. In January 2021, she received a "Counseling Memo" detailing complaints about her as a supervisor, which stated, *inter alia*:

As discussed, the complaints were regarding the following subjects:

- Non-responsiveness to defense counsel and to members of your unit
- Speaking ill of those in your unit with others in your unit
- Derogatory race-based generalizations about defendants
- Overcharging of strikes and failure to effectively dispose of cases

Fish Decl., ¶ 17, Ex. N.

Henderson has been on a medical leave of absence since September 2021. Chan Decl., ¶ 16. She is believed to have since cleaned out her office and moved to Arizona.[7]

### 3.    Rachel Piersig

In October 2018, DA Becton transferred Plaintiff Piersig from a Level 4 position in Homicide to a Level 4 supervisory role as a Felony Expeditor where for the first time she supervised three (3) attorneys. Chan Decl., Ex. D. In April 2019, she was one of the seventeen attorneys who applied for the Level 5 promotions but was also one of the fifteen attorneys not selected. Becton Decl., ¶ 23. When Plaintiff Henderson went on leave in September 2021, Piersig was offered the Level 4 role of Interim Supervisor for DV. Becton Decl., ¶ 20. Piersig accepted, on the condition that she would not supervise Knox. *Id*. At the time of Piersig's deposition in this matter, she had not yet officially started, but she testified that she held the same role in the past and enjoyed it. Fish Decl., Ex. N at 65:2-24.

### 4.    Alison Chandler

Plaintiff Alison Chandler was in a Level 4 position in the Homicide unit when Diana Becton became DA. Chan Decl., Ex. B. Homicide is viewed as a "plum" assignment and considered to be very good for career advancement, but it is also stressful. *See, e.g*., Fish Decl., Ex. D at 172:4-15. In approximately April/May 2019, she requested to be moved out of Homicide and into the Level 4 supervisory Felony Expeditor role in the Richmond office. Becton Decl., ¶ 24; *see also* Fish Decl., Ex. E at 40:3-20, Ex. P at 28:9-18. Chandler wanted to gain experience as a supervisor and ADA Cabral advocated on her behalf. *See id.; see also* Ex. E at 38:2-43:22. However, Sr. DDA Georgiou, who had previously supervised Chandler and was the Level 5 attorney overseeing the Richmond office (and

---

[7] At her deposition in November 2021, Henderson testified that she is building a home in Arizona. Fish Decl., Ex. L at 16:3-6.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT                13.                3:20-CV-01449-JCS

1   was also a longtime colleague of Plaintiffs), thought Chandler would be better in the Felony Filer role.

2   Becton Decl., ¶ 24; Fish Decl., ¶ D at 192:21-193:10 and E at 82:18-83:2. Accordingly, Plaintiff

3   Chandler was made Felony Filer and another attorney, Jun Fernandez (male, currently 55 years old),

4   was placed in the Felony Expeditor role. Becton Decl., ¶ 24. According to ADA Cabral, Cabral and

5   Chandler were good friends and talked often prior to this situation. Fish Decl., Ex. E at 38:2-43:22.;

6   Becton Decl., ¶24. However, Chandler was extremely upset with him for not securing her the

7   Expeditor role and she stopped speaking to him afterward. *Id.*

8          As part of the September 2021 office rotations, DA Becton and the executive management

9   team decided to rotate Fernandez and Plaintiff Chandler. Becton Decl., ¶ 24. Accordingly, Chandler

10  was placed in the supervisory Expeditor role she originally wanted.[8] *Id.*; *Cf* Fish Decl., Ex. E at 40:3-

11  20, Ex. P at 28:9-18. On January 24, 2022, however, Chandler submitted her letter of resignation to

12  DA Becton.[9] Becton Decl., ¶ 24.

13          **5.   Mary Blumberg**

14          Plaintiff Mary Blumberg was a Misdemeanor Trial Team Supervisor when DA Becton was

15  appointed in September 2017. Becton Decl., ¶ 31; Chan Decl., Ex. A, B. It was her first supervisorial

16  role and she reported to Sr. DDA Nancy Georgiou. Becton Decl., ¶ 31; Chan Decl., Ex. A, B; Fish

17  Decl., Ex. O at 16:1-25. A number of attorneys that Blumberg supervised had complaints about her,

18  which they took directly to DA Becton. Becton Decl. ¶ 31. Specifically, they complained that she

19  yelled at them, would require them to clean the office on their hands and knees, and that they felt

20  demeaned by her. *Id.* Additionally, they relayed that they felt she operated with a hand of fear,

21  ridiculing those who made decisions she did not like. *Id.* Accordingly, in 2018, Blumberg was

22  transferred to a role in Homicide. *Id.* Though not a supervisory role, as explained above, Homicide is

23  considered a plum assignment and great for career advancement. *See e.g.*, Fish Decl., Ex. D at 172:4-

24  15. Indeed, Blumberg had requested assignment to Homicide in the past, and testified that *not*

25

26  [8] On September 28, 2021, Jun Fernandez sent an email to the team Ms. Chandler was about to supervise, as Expeditor. Chan, Decl., ¶ 14. It stated, inter alia, that former Chief MacMaster had told

27  Fernandez, "I cannot say that I approve of Alison swapping in for you. You, my friend, are the quintessential Felony Expeditor." *Id.* Chandler complained. *Id.* at 15.  An investigation was conducted and remedial action taken. *Id.* at 16.

28  [9] Ms. Chandler has **not** alleged any claims related to her resignation.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                              14.                        3:20-CV-01449-JCS

1    requesting a position in Homicide was equivalent to career suicide. Fish Decl., ¶ 19, Ex. O at 146:15-

2    147:15, Ex. 25. More recently, in Summer 2021, after she requested a transfer out of Homicide, she

3    was moved into the Felony Filer position previously occupied by Knox. Fish Decl., Ex., O at 31:15-

4    24; Becton Decl., ¶ 31. Blumberg has testified that she is enjoying her role as Felony Filer. *Id.* at

5    20:17-19, 31:9-24.

6    **IV.    ARGUMENT**

7        **A.    Summary Judgment Standard**

8        Summary judgment on a claim or defense, or part of a claim or defense, is appropriate "if the

9    movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

10   judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary

11   judgment must show the absence of a genuine issue of material fact with respect to an essential element

12   of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden

13   of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This can be done by either

14   producing evidence that negates an essential element of the non-moving party's claim or defense, or

15   by showing that the non-moving party does not have enough evidence of an essential element to carry

16   its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos. Inc.*, 210 F.3d

17   1099, 1102 (9th Cir. 2000).

18       **B.    Plaintiffs' Title VII Claims Are Time Barred**

19       Before filing suit for violation of Title VII, a plaintiff must file a timely and sufficient

20   administrative complaint with the EEOC and obtain a "right to sue letter." 42 U.S.C. §2000e-5(e)(1);

21   *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("filing a timely charge is a

22   prerequisite to having an actionable claim"). In order to be timely, the plaintiff must file a

23   discrimination charge with the EEOC within 180 days after the alleged violation.  42 U.S.C. § 2000e-

24   5(e)(1). If either the plaintiff or the EEOC files the plaintiff's charge with an appropriate state

25   enforcement agency, the limitations period is extended to 300 days. *Id*. Discriminatory or retaliatory

26   acts under Title VII are "discrete acts" that start a new clock for filing administrative charges alleging

27   that act and are not actionable unless they occur within the statutory period. *Morgan*, 536 U.S. at 113–

28   14 (holding that the continuing violations doctrine only applies to hostile work environment claims

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                    15.                         3:20-CV-01449-JCS

1   and not claims such as "termination, failure to promote, denial of transfer, or refusal to hire."). For

2   this reason, only the acts within the statute of limitations should be considered for Plaintiffs' Title VII

3   discrimination and retaliation claims.

4      Here, Plaintiffs filed their Charges with the EEOC between November 18, 2021 and November

5   29, 2021. Because Plaintiffs' Charges were filed with an appropriate state enforcement agency (the

6   DFEH), the 300-day limitations period applies. 42 U.S.C. § 2000e-5(e)(1). Thus, to be timely,

7   Plaintiffs' Title VII claims here must arise out of acts that took place on or after *late January 2021* –

8   300 days before they filed their Charges.[10] Most do not. In addition, Plaintiffs cannot rely on recent

9   promotions and transfers to support their claims to the extent they were not alleged in the SAC filed

10  in March 2021. *Maples v. SolarWinds, Inc.*, 50 F. Supp. 3d 1221, 1232 (N.D. Cal. 2014) ("On a motion

11  for summary judgment, the plaintiff's allegations and theories of liability are confined to those found

12  in the operative complaint.").

13     The bulk of Knox's allegations stem from conduct occurring between October 2018 and June

14  2019, including her demotion in October 2018. Her only allegations that occurred within the

15  appropriate statute of limitations concerns her lateral transfer to the Elder Unit in February 2021.[11]

16  Piersig's Charge contains allegations dating as far back as 2015, as well as in 2018 and 2019. Her only

17  allegation within the statute of limitations is that others were promoted over her in the summer of

18  2021,[12] but Plaintiffs have not amended their complaint to include these allegations, and thus cannot

19  rely upon them here. *See* SAC; *Maples*, 50 F. Supp. 3d at 1232. Similarly, Blumberg's Charge only

20  contains allegations from events occurring in 2018 and 2019.[13] Chandler and Henderson's Charges

21

22

---

23  [10] Plaintiff Knox's Title VII claims must arise out of acts that took place on or after January 22, 2021;
    Plaintiffs' Henderson and Chandler's Title VII claims must arise out of acts that took place on or after
24  January 27, 2021; Plaintiffs' Blumberg and Piersig's Title VII claims must arise out of acts that took
    place on or after February 2, 2021.
25  [11] Knox's Charge also alleges a failure to promote in the summer of 2021. However, her SAC does
    not include these allegations, and thus she cannot rely upon them here. *See* SAC; *Maples*, 50 F. Supp.
26  3d at 1232.
    [12] Piersig claims that this was done in "retaliation," but does not indicate in her Charge what she
27  believes it to be in retaliation for.
    [13] Blumberg alleges complaints concerning her lateral transfer out of Homicide to Felony Filer in
28  September 2021. She did not, however, amend her complaint to include this allegation. *See* SAC;
    *Maples*, 50 F. Supp. 3d at 1232.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                    16.                    3:20-CV-01449-JCS

likewise center around allegations taking place in 2018 and 2019.[14] Accordingly, all of Plaintiffs' Title VII claims based on conduct before late January 2021 are time-barred and any claims based on conduct occurring after the filing of the SAC in March 2021 (the operative complaint) are not at issue.

### C.     Chandler's FEHA Age Claim Is Barred For Failure to Exhaust

"In order to bring a civil action under FEHA, the aggrieved person must exhaust the administrative remedies provided by law." *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1121 (1989). Exhaustion requires filing a written charge with the DFEH, which defines the permissible scope of any subsequent civil action. *Id.* at 1121-23. Allegations in the civil complaint that fall outside of the scope of the administrative charge are barred for failure to exhaust. *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001). Chandler's DFEH Charge only alleges discrimination and retaliation based on gender, and contains no allegations with respect to age discrimination and retaliation. In *Yurick*, the court dismissed plaintiff's age discrimination claim for failure to exhaust because it was not alleged in her Charge, and was not "like or reasonably related to" her gender discrimination claim. *Yurick*, 209 Cal. App. 3d at 1123, 257. Here, the Court should likewise dismiss Chandler's age discrimination claim because she failed to exhaust her administrative remedies and allowing her to proceed "would undermine vital policy interests embodied in FEHA." *Id.* at 1123.

### D.     To The Extent Plaintiffs' Age And Gender Claims Are Not Time Barred, They Fail Because No Genuine Dispute Of Material Fact Exists

#### 1.     Standard For Discrimination Claims

The same burden-shifting framework applies to discrimination claims under both Title VII and FEHA. *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). Under that framework, to survive summary judgment on discrimination claims, Plaintiffs must point to direct evidence of discriminatory intent or raise an inference of discriminatory intent under the burden-shifting *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998).

---

[14] They also allege "disparagement" by a younger male supervisor in 2021, but they have not amended their Complaint to include these allegations. *See* SAC; *Maples*, 50 F. Supp. 3d at 1232.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                                          17.                                          3:20-CV-01449-JCS

In contrast, to raise an inference of discriminatory intent under the *McDonnell Douglas* framework, Plaintiffs first must establish a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802. To make a *prima facie* case of discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) that persons outside her protected class with equal or lesser qualifications, were given more favorable treatment. *Fonseca v. Sysco Food Servs. of Arizona, Inc.,* 374 F.3d 840, 847 (9th Cir. 2004); *see also Lam v. City & Cty. of San Francisco,* 868 F. Supp. 2d 928, 952 (N.D. Cal. 2012) ("California law under FEHA mirrors federal law under Title VII"). For the purposes of summary judgment, a *prima facie* case requires Plaintiffs to "produc[e] enough evidence to permit the trier of fact to infer the fact at issue." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 n. 7 (1981).

If Plaintiffs establish a *prima facie* case, the burden of production, but not persuasion, shifts to Defendants to articulate some legitimate, nondiscriminatory reason for the challenged actions. *Hawn*, 615 F.3d at 1155. Once Defendants produce such evidence, Plaintiffs can survive summary judgment only by providing "significant, substantial evidence of pretext." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983).

Here, Plaintiffs have not – and cannot – present any direct evidence of discriminatory intent. Nor are they able to raise an inference of discriminatory intent under the *McDonnell Douglas* framework. As set forth below, Plaintiffs cannot prove a *prima facie* case, and, even if they could, Defendants have legitimate nondiscriminatory reasons for their actions and Plaintiffs cannot show substantial evidence of pretext.

### 2.    Plaintiffs' Claims Based On Lateral Assignments And Committee Exclusion Fail As A Matter Of Law

Plaintiffs' claims in this case involve (1) complaints about lateral assignments (Level 4 to Level 4); (2) alleged exclusion from committee membership and training positions; (3) Knox's demotion from Level 5 to Level 4; and (4) an alleged failure to promote Knox, Piersig and Henderson from Level 4 to Level 5. With respect to lateral assignments and allegations involving exclusion from committees, Plaintiffs' claims fail as a matter of law.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                            18.                            3:20-CV-01449-JCS

### a.   Lateral Assignments And Committee Exclusion Are Not Adverse Actions

Not every change in an employee's working conditions constitutes an adverse employment action. Indeed, "[a] change that is merely contrary to the employee's interests or not to the employee's liking is insufficient." *Akers v. County of San Diego*, 95 Cal. App. 4th 1441, 1455, (2002). "[W]orkplaces are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." *McRae v. Dep't of Corr. & Rehab.*, 142 Cal. App. 4th 377, 386 (2006) (citations omitted). Indeed, "[i]f every minor change in working conditions or trivial action were a materially adverse action then any 'action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" *Id*. As such, to establish an adverse employment action, a plaintiff must show the employer's actions had a detrimental and substantial effect on the plaintiff's employment. *Id.*

Here, the majority of Plaintiffs' complaints concern lateral transfers (Level 4 to Level 4). Knox, Blumberg, and Chandler also allege they were removed from various committees. Under California law, "[a] transfer is not an adverse employment action when it is into a comparable position that does not result in substantial and tangible harm." *McRae*, 142 Cal. App. at 393; *see also Malais v. LA City Fire Dep't,* 150 Cal. App. 4th 350, 357-58 (2007) (a transfer to a lesser preferred position alone does not constitute an adverse employment action, where the employee receives equivalent pay, benefits and promotional opportunities and experiences no hostile environment). This remains true even if the plaintiff finds the transfer to be "personally humiliating." *McRae*, 142 Cal. App. at 393. Similarly, "an assertion that the new position involved work that was unfamiliar and more stressful [does] not rise to the level of constituting an adverse employment action." *Woodson v. Int'l Bus. Machines, Inc.*, 2006 WL 1195453 at *5 (N.D. Cal. May 2, 2006) (internal citations omitted); *see Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (a "bruised ego" demotion without change in pay, benefits, duties or prestige, or reassignment to a more inconvenient job is not a tangible employment action) (citations omitted).

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

19.

3:20-CV-01449-JCS

Accordingly, with respect to their lateral transfers, as well as Plaintiffs' allegations that they were excluded from committee membership[15] and training positions, Plaintiffs cannot establish materially adverse employment actions under federal or California law, as they did not involve a demotion, reduction in pay, loss of benefits, a less distinguished title or a notable change in hours worked. *See* Chan Decl., ¶ 9.

### b.  Legitimate Nondiscriminatory Reasons Exist For Plaintiffs' Job Assignments

Even if Plaintiffs could establish *prima facie* cases of age and gender discrimination, their claims nevertheless fail because there is no dispute that Defendants had legitimate nondiscriminatory reasons for the decisions.[16] *See Burdine*, 450 U.S. at 254.

Knox was demoted to Felony Filer because of the numerous performance issues identified above in Section III, and addressed more fully below in Section IV.D.3. Then in February 2021, Knox was reassigned to the Elder Unit pursuant to the suggestion by her friend and co-Plaintiff Henderson because it was a vacant position that required an experienced attorney to independently handle complex cases, including homicides. Becton Decl., ¶ 27; Fish Decl., Ex. K at 49:7-11, Ex. L at 74:14-77:02.

Blumberg was moved from Misdemeanor Trial Supervisor to Homicide in 2018 because of complaints about her as a supervisor. Becton Decl., ¶ 31. Moreover, she had previously asked to be moved to Homicide and it is considered a valuable role in the Office for experience and career advance. Fish Decl., Ex. O at 146:15-147:15, Ex. 25. Then, after almost three years in Homicide, in August 2021 she asked for a transfer and was accordingly moved to the Felony Filer role based on her experience and the needs of the Office. Becton Decl., ¶ 31.

Henderson was transferred from the Elder Unit into a newly created Level 4 role of Domestic Violence ("DV") Supervisor in June 2019, because she had the experience to handle the role. *See* Chan

---

[15] Notably, the facts here show that DA Becton never removed or excluded Mary Knox, Mary Blumberg or Alison Chandler from any committees. Nor have Knox, Blumberg or Chandler ever been removed from any trainings of new hires. Becton Decl., ¶ 9.

[16] To be clear, this is a burden of production only, as the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253 (citations omitted). Once a legitimate reason for the employment action is proffered, the presumption of unlawful discrimination is rebutted and "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (citation omitted).

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT                    20.                    3:20-CV-01449-JCS

Decl., Ex. G. While she remained a Level 4, it provided her with more supervisory responsibilities, as she went from supervising one attorney to supervising six attorneys. *Id.* Henderson remained in this role until going on leave in September 2021. *Id.* at ¶ 16.

Piersig was transferred from Homicide to her first supervisorial role as Felony Expeditor in October 2018 based on her abilities, experience, and the needs of the Office. *See* Chan Decl., Ex. D. This was a valued assignment to have in the Office. Fish Decl., Ex. D at 172:4-15 Then, when Henderson went on leave in September 2021, Piersig was offered, and accepted, the role of DV Supervisor on an interim basis. *See* Becton Decl., ¶ 30; Fish Decl., Ex. N at. 65:2-24.

Finally, in 2019 Chandler requested to be moved out of Homicide and into the supervisory Felony Expeditor role in the Richmond office. Becton Decl., ¶ 24. While Chandler desired this assignment, and her friend Dan Cabral advocated on her behalf, she ultimately did not receive the position because Nancy Georgiou (who was moving to Level 5 supervisor of the Richmond office) believed she should instead be the Felony Filer. *Id.* So instead, Jun Fernandez got the Felony Expeditor role and Chandler received the Felony Filer role. *Id.* However, after two years as Felony Filer, Georgiou and others on the executive management team, including DA Becton, agreed Chandler was ready for a supervisorial role, and, as part of office rotations in September 2021, she swapped roles with Fernandez and was assigned the Felony Expediter in Richmond. *Id.*

### c.    There Is No Evidence Of Pretext

At this point, given Defendant's proffered legitimate, nondiscriminatory reasons, in order to defeat summary judgment, Plaintiffs must produce "specific, substantial evidence" that the rationale offered by Defendants was pretextual. *Horn v. Cushman & Wakefield Western, Inc.*, 72 Cal. App. 4th 798, 807 (1999); *Manatt v. Bank of Am., NA,* 339 F.3d 792, 801 (9th Cir. 2003) ("Because Manatt failed to introduce any direct or specific and substantial circumstantial evidence of pretext, summary judgment for the [employer] must be affirmed."). A plaintiff must provide evidence to show his protected status "actually played a role" and "had a determinative influence" on the decision. *Gathenji v. Autozoners, LLC*, 703 F. Supp. 2d 1017, 1028 (E.D. Cal. 2010) (plaintiff "must provide evidence that his protected class actually played a role and had a determinative influence" on the adverse action) (citations omitted).

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

21.

3:20-CV-01449-JCS

1    In this case, Plaintiffs cannot point to any evidence of pretext or that their protected status

2    played any role in their job assignments. Plaintiffs only argument seems to be their own beliefs that

3    they were highly experienced and qualified for the roles they preferred,[17] but other employees were

4    chosen over them. However, Plaintiffs' subjective beliefs hold no weight here. *See, e.g., Bradley v.*

5    *Harcourt, Brace & Co*., 104 F.3d 267, 270 (9th Cir. 1996) ("an employee's subjective personal

6    judgments of her competence alone do not raise a genuine issue of material fact"). Indeed, it is wholly

7    insufficient for an employee to "simply show the employer's decision was wrong, mistaken or unwise"

8    to establish pretext. *Dep't of Fair Employment & Housing v. Lucent Techs., Inc*., 642 F.3d 728, 746

9    (9th Cir. 2011). Rather, it is Defendants' decision here that is given deference. *See Cotton v. Alameda*,

10   812 F.2d 1245, 1249 (9th Cir. 1987) (holding that the court will not second guess the employer's

11   selection criteria absent a showing of disparate impact on plaintiff's protected class); *see also Grosz*

12   *v. Boeing Co.,* 455 F. Supp. 2d 1033, 1036 (C.D. Cal. 2006) (holding that the "[c]ourt's role is to

13   prevent discriminatory and retaliatory employment practices, not to second guess employment

14   decisions made for legitimate business reasons, regardless of whether those decisions are unfair,

15   arbitrary, or unreasonable").

16   Chandler alleges that she was told she was "too emotional" or "excitable" and Piersig alleges

17   that she was told she was "too mean" to police officers (comments allegedly tied to their gender), but

18   that is likewise insufficient to establish pretext because they do not allege that a decisionmaker made

19   the statements. *See, e.g., Reid v. Google, Inc*., 50 Cal. 4th 512, 537 (2010) (noting that federal circuit

20   courts deem irrelevant any remarks made by non-decision-making coworkers or remarks made outside

21   a decisional process as stray remarks); *Mondero v. Salt River Project*, 400 F.3d 1207, 1213 (9th Cir.

22   2005) ("Stray remarks not acted upon or communicated to a decision maker are insufficient to establish

23   pretext."); *Wong v. Pape Mach., Inc*., 2009 WL 937481, *8 (E.D. Cal. April 7, 2009) (comment by

24   employee who did not supervise plaintiff or have authority to make decisions pertaining to requested

25   leaves of absences is "at most" a stray remark and "is entitled to no weight in considering whether the

26   firing was pretextual or whether the decisionmaker harbored discriminatory animus").

27

28

---

[17] Plaintiffs do not identify which Level 4 roles they preferred/believe they should have gotten instead of the assignments they were given that both matched their skills and the needs of the office.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                    22.                    3:20-CV-01449-JCS

1    Plaintiffs were all given respected and important assignments within the Office. Indeed,

2    Chandler and Piersig were given assignments that they expressly wanted, and Knox's current

3    assignment was at the suggestion of her friend and co-Plaintiff Henderson. As such, there is no

4    evidence that their lateral assignments were pretext.

5    ### 3.    Knox's Demotion Claim Fails As A Matter Of Law

6    Plaintiff Knox is the only Plaintiff to allege that she suffered an adverse employment action by

7    being demoted in October 2018. Regardless, she was demoted for legitimate nondiscriminatory

8    reasons. Knox had a poor reputation when it came to trust and chain of command. As set forth above,

9    *supra* Section III, DA Becton had been notified about several complaints by attorneys who feared

10   retaliation by Knox and she had reasons to conclude Knox was not trustworthy. *See* Becton Decl., ¶ 17

11   . After DA Becton was appointed, she was able to observe firsthand the problems with Knox's

12   performance in the Office. *See* Becton Decl., ¶¶ 17-18. Based on her own interactions with Knox, DA

13   Becton felt she was not trustworthy and complaints made by Knox's subordinates confirmed as much.

14   *Id.* For example, DA Becton felt she could not trust Knox after Knox made what DA Becton believed

15   were misrepresentations concerning Superior Court Judge Santos.[18] *Id.* Knox also had a history of not

16   following office policies and the chain of command, often having issues with her own supervisor. *Id.*;

17   Fish Decl., Ex. J, Ex. K at 200:1-12, 209:4-19. She also received many complaints from the defense

18   bar, with whom she had a reputation for being untrustworthy. Becton Decl., ¶ 17. For these reasons,

19   DA Becton, with the executive management team's support, found it appropriate to demote Knox from

20   Level 5 to Level 4 in October 2018. *Id.* at 17-18.

21   Moreover, Knox cannot meet her burden to show that this decision was pretext for age or

22   gender discrimination. The evidence overwhelmingly shows that the demotion was justified because

23   she was not qualified to be a part of DA Becton's executive management team. Indeed, DA Becton

24   has made at least four demotion decisions since she became DA, and three of the four were men. *See*

25   Becton Decl., ¶¶ 13-14, 16, 20; Chan Decl., Ex. A-J. Plaintiff Knox is the only woman who has been

26   demoted, and therefore there is no evidence of bias based on gender. DA Becton's entire leadership

27

28   ---
[18] Knox claimed that Judge Santos had appointed her to be the legal advisor to the civil grand jury, but DA Becton concluded this was not accurate. Becton Decl., FN 1.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                    23.                        3:20-CV-01449-JCS

team (with the exception of one 38 year-old) has always consisted of individuals over 40 years old. *See* Chan Decl., Ex., K. Notably, Plaintiff did not even attempt to speculate why she was demoted or why others were promoted over her; indeed, she testified that she "has no idea" why. Fish Decl., Ex. K at 32:2-15, 35:9-11. Further, her suggestion that DA Becton harbors a bias based on age and gender is baseless, particularly considering DA Becton is also a woman (and age 70) who has been a champion for diversity throughout her career. Therefore, Knox cannot refute Defendants' legitimate nondiscriminatory reason for her demotion, and thus her claim fails as a matter of law.

### 4.   Knox, Henderson, And Piersig's Claims Based On Defendants' Failure To Promote Them To Level 5 Fail As A Matter Of Law

Plaintiffs Chandler and Blumberg did not apply for Level 5 promotion in April 2019, and therefore they cannot claim that they were denied this promotion based on their age and gender. *See Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (to prevail on discrimination claim from a failure to promote, plaintiff must establish she applied for the position).

While Plaintiffs Knox, Henderson and Piersig did apply for Level 5 in April 2019, their claims nevertheless fail because there were legitimate nondiscriminatory reasons they were not promoted. The relevant inquiry is not whether a plaintiff in the abstract is more qualified than the chosen candidate, but whether the chosen candidate is more qualified with respect to the criteria actually used by the employer to make its selection. *Coleman v. Quaker Oats*, 232 F.3d 1271, 1285 (9th Cir. 2000). Seventeen attorneys applied for two open Level 5 roles. Each candidate was interviewed by the same panel and asked identical questions. Becton Decl., ¶ 23. After the interviews, the panel discussed all of the candidates and concluded that Simon O'Connell and Stacey Grassini were the most qualified for the roles. *Id.* While Plaintiffs want to rely on the number of years of experience and number of trials and trial wins as factors that should have been given the most weight in the promotion decision, DA Becton used a different approach. She considered these factors, but she also weighed several other factors as she had the right to do, including who demonstrated a willingness to implement her vision and policies for the Office.[19] *Id.* She also listened to the group discussion and their recommendations,

---

[19] Historically, and by law, the "policymaker" exception affords the sitting District Attorney wide discretion to select his/her management team through promotions and demotions. *See Elrod v. Burns*, 427 U.S. 347, 367 (1976).

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                24.                3:20-CV-01449-JCS

1    and the consensus was that Knox, Henderson, and Piersig were not as qualified as O'Connell and

2    Grassini. *See Barefield v. Bd. of Trustees of CA State Univ., Bakersfield,* 500 F. Supp. 2d 1244, 1261

3    (E.D. Cal. 2007) (that a more qualified applicant was offered the position in question is a legitimate,

4    nondiscriminatory reason); *Scott v. Solano Cty. Health & Soc. Servs. Dep't*, 2008 WL 3835267, at *9

5    (E.D. Cal. Aug. 15, 2008) ("the County has presented a legitimate nondiscriminatory reason for not

6    promoting plaintiff: she was not the most qualified applicant").

7         In addition, Knox, Henderson, and Piersig cannot point to any evidence that the reasons offered

8    by Defendants are pretext. Plaintiffs will likely argue that the application process was subjective, and

9    therefore the fact that O'Connell and Grassini were promoted over them shows Defendants harbored

10   bias. However, "there is nothing inherently suspect in the use of subjective criteria" and the fact that

11   an employment decision "was based upon subjective criteria does not, by itself, demonstrate pretext."

12   *Hicks v. KNTV Television, Inc*., 160 Cal. App. 4th 994, 1005 (2008) (employer's subjective assessment

13   is entitled to credence even if it departs from employee's). Therefore, absent some evidence that

14   Defendants made its decisions based upon age or gender, the mere use of subjective criteria does not

15   permit the Court to second guess Defendants' business judgment. *Id.*

16        Plaintiff Piersig asserts that she "has been overlooked for supervisory positions that [they are]

17   immensely qualified for and those have gone to younger, less qualified males." SAC at ¶ 80(iii)(xii).

18   But this is in no way evidence of discriminatory animus. As set forth above, Plaintiffs' subjective

19   beliefs hold no weight here. *See, e.g., Bradley v*, 104 F.3d at 270; *Lucent Techs., Inc*., 642 F.3d at 746.

20   Moreover, the "[c]ourt's role is to prevent discriminatory and retaliatory employment practices, not to

21   second guess employment decisions made for legitimate business reasons, regardless of whether those

22   decisions are unfair, arbitrary, or unreasonable." *Grosz*, 455 F. Supp. 2d at 1036.

23        Additionally, Henderson vaguely refers to the April 2019 application process as a "sham."

24   SAC at ¶ 80(v)(iv). However, she cannot explain why or how this process, or related decisions, were

25   motivated by gender or age. Thus, Plaintiffs here cannot point to sufficient evidence of pretext

26   sufficient to defeat or rebut Defendants' legitimate, nondiscriminatory reasons for their actions.

27   Accordingly, the Court should grant summary judgment in favor of Defendants with respect to all of

28   Plaintiffs' FEHA and Title VII discrimination claims.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                    25.                    3:20-CV-01449-JCS

**E.     Plaintiffs' Retaliation Claims Fail Because There Is No Evidence That They Engaged In Protected Activity, Or That A Causal Link Exists Between Any Alleged Protected Activity And An Adverse Action**

A claim for retaliation under FEHA and Title VII requires that Plaintiffs show (1) engagement in a protected activity, (2) adverse employment action, and (3) a causal link between the two. *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 472 (2004); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). Retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

**1.     Knox's Retaliation Claim Fails**

As an initial matter, Knox makes the conclusory allegation that she was retaliated against for supporting DA Becton's political adversary. SAC, ¶ 118(xv)(i-iii). But supporting an adversary in an election is not protected activity under Title VII or FEHA, and is irrelevant to her gender or age discrimination concerns. *See* 42 U.S.C. § 12203; Cal. Gov't Code § 12940; *cf. Fazio v. City of San Francisco*, 125 F.3d 1328, 1333 (9th Cir. 1997) ("[a] public agency would be unmanageable if its head had to . . . retain his political enemies . . . in positions of confidence or positions in which they would be . . . exercising discretion in the implementation of policy").

Knox's only "protected activity" involves the filing of her DFEH Charge, this lawsuit, and her EEOC Charge. However, Plaintiff Knox filed her Charges and this lawsuit, *after* she was demoted and reassigned to a Level 4 Felony Filer. Thus, she cannot establish a causal connection between a protected activity and those actions. *James v. Tempur Sealy Int'l, Inc.*, 2019 U.S. Dist. LEXIS 64280, *13 (N.D. Cal. April 15, 2019) (adverse action must come *after* the alleged protected activity). Likewise, even if Knox engaged in protected activity, she cannot succeed on retaliation claims based on her lateral transfer to the Elder Unit in February 2021, because, as explained above, a lateral transfer does not constitute an adverse employment action. *See McRae,* 142 Cal. App. 4th at 393; *Malais,* 150 Cal App 4th at 357-58. Because she cannot prove an adverse employment action, her claim of retaliation based on her assignment to the Elder Unit in 2021 automatically fails. *See Miller,* 36 Cal. 4th at 472 (FEHA retaliation claim requires that the plaintiff suffered an adverse employment action).

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

26.

3:20-CV-01449-JCS

## 2.     Piersig And Chandler's Retaliation Claims Fail

Plaintiffs Piersig and Chandler also fail to show that they engaged in protected activity, or that a causal link exists between any alleged protected activity and an adverse employment action. To begin with, they assert that:

> In June 2018, both Ms. Piersig and Ms. Chandler went to Ms. Johnson to voice their frustration and concerns regarding their treatment and management within the Homicide Unit. Specifically, they both raised the times when they voiced issues or concerns on their cases and their experience and concerns were ignored, demeaned and discounted. Ms. Johnson indicated that 'things would change for the better soon' but nothing favorable occurred.

(SAC, ¶¶ 118(b)(i).)

However, neither Piersig nor Chandler allege that they made any complaints to former ADA Johnson about alleged mistreatment on the basis of gender, age, or any other protected status, and making generalized complaints about management, their cases, and venting to Johnson about their "frustration" are insufficient to constitute protected activity. *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028, 1047 (2005) ("complaints about personal grievances or vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate will not suffice to establish protected conduct"); *Jurado v. Eleven-Fifty Corp*., 813 F.2d 1406, 1411-12 (9th Cir. 1987) (no protected activity to support Title VII retaliation claim where complaint to employer was made for "personal reasons" and not tied to protected characteristic); *Mayfield v. Sara Lee Corp.,* 2005 WL 88965, *8 (N.D. Cal. Jan. 13, 2005) (no protected activity to support FEHA retaliation claim where complaint did not alert his employer that he believed discrimination, as opposed to merely unfair personnel treatment, occurred).

Piersig alleges that after filing the Complaint in this case she received a "retaliatory" performance review from her supervisor, but there is no evidence showing why it was retaliatory or that her supervisor even had knowledge of her Charge or Complaint. *See Flores v. City of Westminster*, 873 F.3d 739, 748 (9th Cir. 2017) (to demonstrate retaliation, a plaintiff must show that the protected conduct was a substantial motivating reason for the adverse employment action). Accordingly, it is

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

27.

3:20-CV-01449-JCS

1  undisputed that Plaintiff Piersig and Chandler did not experience any adverse employment actions as

2  a result of their engagement in protected activity.

3  ### 3.   Henderson's Retaliation Claim Fails

4  Plaintiff Henderson asserts she "repeatedly complained about being treated differently based

5  upon her age and gender and she has complained about the lack of female leaders. In retaliation, she

6  has not been promoted, she has been treated with disrespect and she has been given more work without

7  any pay increase." SAC, ¶ 118(e)(i).

8  While Henderson alleges she made "complaints" to Defendants, in deposition she testified that

9  she spoke to DA Becton and Chief Johnson about wanting a promotion and about promoting diversity

10  in the Office in general, but did not make any formal complaint or otherwise put either DA Becton or

11  Chief Johnson on notice of alleged discrimination. Fish Decl., Ex. L at 61:02-63:14. *See Lewis v. City*

12  *of Fresno*, 834 F. Supp. 2d 990, 1002 (E.D. Cal. 2011) (employee's complaint must alert employer of

13  "belief that discrimination, not merely unfair personnel treatment, had occurred.") (internal citations

14  omitted); *Kelley v. Corr. Corp. of Am.,* 750 F. Supp. 2d 1132, 1143-44 (E.D. Cal. 2010) ("there must

15  be some evidence that the employer knew that the employee was engaged in activities in opposition

16  to the employer at the time of the claimed retaliatory action"). Talking about "more senior female

17  representation" is not the same as raising concerns about discrimination.[20] *See Yanowitz*, 36 Cal. 4th

18  at *1047; Jurado*, 813 F.2d at 1411-12; *Mayfield*, 2005 WL 88965 at *8.

19  The only protected activity Henderson engaged in was filing her Charges and this lawsuit, but

20  all of the allegedly adverse actions she complains of took place ***before*** she filed the Charges/lawsuit.

21  Thus, she did not experience any adverse employment actions "but-for" her protected activity.

22  ### 4.   Blumberg's Retaliation Claim Fails

23  The only protected activity Plaintiff Blumberg engaged in was the filing of her Charges and

24  this lawsuit. The only adverse action that Plaintiff Blumberg alleges took place since that time was her

25  lateral transfer from one Level 4 position to another Level 4 position (she did not apply for a promotion

26  to Level 5). As explained above, lateral transfers are not adverse employment actions. *See McRae,* 142

---

[20] To the extent Ms. Henderson did speak with DA Becton and Chief Johnson about female representation, the conversation was between three women, and DA Becton and Chief Johnson held the two most senior roles in the office.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

28.

3:20-CV-01449-JCS

Cal. App. 4th at 393; *Malais,* 150 Cal App 4th at 357-58. Therefore, as with the other Plaintiffs here, it is undisputed that Plaintiff Blumberg did not experience any adverse employment actions as a result of her engaging in a protected activity.

### F. Plaintiffs' Failure To Prevent Discrimination Claim Also Fails

Under the FEHA, it is unlawful for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code §12940(k). There are two separate obligations to prevent discrimination: (1) prompt investigation of a discrimination claim; and (2) establishment and promulgation of antidiscrimination policies and implementation of effective procedures to handle discrimination claims. *California Fair Employment & Hous. Comm'n v. Gemini Aluminum Corp.,* 122 Cal. App. 4th 1004, 1024–25 (2004). Here, Plaintiffs' failure to prevent claim fails for two reasons. First, Plaintiffs' claim is derivative of their failed discrimination claims. Second, Defendants met its obligations to prevent discrimination by investigating Plaintiffs' claims and implementing well-established policies and procedures to prevent discrimination.

#### 1. Because Defendant Did Not Engage In Discrimination, Plaintiffs' Derivative Failure To Prevent Claim Necessarily Fails

California courts have held that in order to prevail on a claim under this section a plaintiff must establish that the employer actually engaged in discriminatory conduct. *See Trujillo v. N. County Trans. Dist*., 63 Cal. App. 4th 280, 289 (1998). As explained above, Plaintiffs cannot establish that the County discriminated against them on the basis of age or gender. Defendants are therefore entitled to summary judgment on the failure to prevent claim because it is derivative of Plaintiffs' failed discrimination claims. *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1150 (9th Cir. 2017) (affirming summary judgment ruling in favor of the employer and holding that the plaintiff's failure to prevent claim necessarily failed as derivative of his failed FEHA age discrimination claim).

#### 2. Defendants Promptly Investigated And Have Robust Policies And Procedures In Place To Prevent Discrimination

Defendants took reasonable steps to prevent discrimination by conducting a prompt investigation of Plaintiffs' claims. Between August and late November of 2019, the Plaintiffs filed their respective DFEH Charges. Once Defendant was aware of the Charges, it took immediate action

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT                             29.                          3:20-CV-01449-JCS

to investigate, retaining a private third-party investigator to investigate Plaintiff Knox's[21] allegations of age and gender discrimination. Therefore, it is undisputed that Defendants conducted a prompt and reasonable investigation. *See Northrop Grumman Corp. v. Workers' Comp. Appeals Bd.,* 103 Cal. App. 4th 1021, 1036–37 (2002) ("Prompt investigation of a discrimination claim is a necessary step by which an employer meets its obligation to ensure a discrimination-free work environment.").

Moreover, Defendant maintains, distributes, and educates its employees on its anti-discrimination policy, as required by California law. Defendants maintain anti-discrimination policies and educate employees on the County's anti-discrimination policies and how to report any instances of discrimination. Chan Decl., Exs. L-M. In addition, prosecutors attend anti-discrimination training required by law. It is clear Defendants took reasonable steps to prevent discrimination, as the County has policies in place that help prevent discrimination and avenues for employees to report discrimination. Chan Decl., Ex. L-M; *see Keesler v. Chipotle Mexican Grill, Inc.,* 2015 WL 898970, at *7 (C.D. Cal. Mar. 3, 2015) (granting summary judgment on failure to prevent claim where defendant promptly investigated and met its obligations to educate employees on its anti-harassment policy).  Plaintiffs' claim therefore fails as a matter of law.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter summary judgment on all of Plaintiffs' asserted claims. Alternatively, Defendants request the Court enter partial summary judgment on each Plaintiff's claims that fail based upon the undisputed material facts.

Dated: March 17, 2022

LITTLER MENDELSON, P.C.

/s/ *John C. Fish, Jr.*
John C. Fish, Jr.
Blair C. Senesi

Attorneys for Defendants
COUNTY OF CONTRA COSTA and CONTRA COSTA COUNTY OFFICE OF THE DISTRICT ATTORNEY

---

[21] After receiving Knox's DFEH Charge, the County retained an independent investigator—attorney Eli Makus—to investigate her claims of age and gender discrimination. Fish Decl., ¶ 3. On April 16, 2020, Makus completed his Investigation Report, which found no evidence of either gender or age discrimination. *Id.* at Ex. B.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

30.

3:20-CV-01449-JCS